OPINION OF THE COURT
James B. Canfield, J.
Petitioners commenced this proceeding pursuant to Village Law § 2-210 challenging respondent Supervisor of the Town of North Greenbush Paul Tazbir’s depriving the inhabitants of the proposed Village of Defreestville of any opportunity to vote on the matter of incorporating the village by determining that their petition for incorporation is legally insufficient. Weeks after the return date of this proceeding, Tazbir, joined by respondents Thomas Gallogly and John Gallogly, moved pursuant to CPLR 7804 (g) for an order transferring this proceeding to the Appellate Division on the grounds that petitioners allegedly challenge Tazbir’s rejection of the petition as not supported by “substantial evidence” (CPLR 7803 [4]).
The court concludes in this case of first impression that transfer to the Appellate Division is inappropriate in this and all other Village Law § 2-210 challenges. Transfer is inappropriate because, even where factual determinations are being challenged, the standard of review in Village Law § 2-210 proceedings is never one of “substantial evidence.” It is no mere happenstance that none of the cases that Tazbir cites for the proposition that the court must defer to him or transfer this proceeding to the Appellate Division involves a petition for incorporation of a village. Tazbir’s claim that his factual determinations are subject to “substantial evidence” review is unfounded. It, like Tazbir’s assertions that his actions are justified because he “representes] ALL of the citizens of North Greenbush,” both those in favor and opposed to incorporation of the Village and has “tried to be fair to all of the Town’s residents” *414 or that “as the person charged with weighing the evidence, the Supervisor is entitled to deference to his determination based upon the record” cannot be reconciled with the Village Law. As will be shown, Tazbir’s resort to inappropriate standards led directly to his reaching the wrong conclusion.
The court’s review of a supervisor’s determination of the legal sufficiency of a petition for incorporation is fundamentally different from review of typical administrative determinations because the two determinations are fundamentally different from one another. In the typical CPLR article 78 proceeding, the administrative decision maker has discretion in choosing which evidence to rely on and what decision to make and the decision will not be overturned as long as there is enough evidence in the record to meet the “substantial evidence” standard and the determination is not “arbitrary and capricious.” In sharp contrast, the Village Law directs the process by which inhabitants of the proposed village, as opposed to the residents of the surrounding town, can call for an opportunity to determine whether or not to incorporate.
While any voter within the town is permitted to file objections (Village Law § 2-206 [3]), the grounds for objecting (Village Law § 2-206 [1] [a]-[g]) are limited to the sufficiency of the petition and matters within the proposed village, rather than the interests of the town as a whole or inhabitants outside the proposed village. Thus, Tazbir clearly violated the Village Law when he weighed the interests of the citizens of North Green-bush generally as he determined whether the petition for an election among the inhabitants of the proposed village was sufficient. In addition to narrowing the zone of relevant interest to the proposed village, the Village Law also clearly favors petitioners for incorporation being given the opportunity to put the matter to a vote of the people. For example, the objectors to the petition for incorporation bear the burden of proving that the petition for incorporation is legally insufficient (Village Law § 2-206 [3]).
As a result of these statutory restrictions, the supervisor’s decision regarding a petition for incorporation is nothing more than a “ministerial function” (Matter of Marcus v Baron, 106 Misc 2d 71, 74 [1980]). Supervisors are limited to considering only “whether the petition complies with the requirements of [article 2 of the Village Law]” (Village Law § 2-208) and are confined, in the performance of that ministerial function, to a consideration of the objections directed thereto (Matter of Marcus v Baron, supra).
*415 Consistent with its petition-favoring nature and the ministerial nature of the supervisor’s decision, Village Law substitutes petition-favoring standards and procedures for judicial review of the supervisor’s decision. Instead of the agency-favoring standards set forth in CPLR 7803 (l)-(4), Village Law § 2-210 provides that:
“Such proceeding may be brought on the ground or grounds that said decision is illegal, based on insufficient evidence, or contrary to the weight of evidence. If the court determines that additional testimony or evidence is necessary for the proper disposition of the matter it may take such evidence or testimony or appoint a referee to take such evidence or testimony as it may direct and report the same to the court with his findings of fact and conclusions of law which shall constitute a part of the proceeding upon which the determination of the court shall be made. The court may reverse or affirm on the basis of law and fact as determined by the court.” (Emphasis added.)
Thus, the real issues in this proceeding are whether the supervisor’s determination “is illegal, based on insufficient evidence, or contrary to the weight of evidence.” Instead of combing the record to determine whether there is evidence to support the supervisor’s decision, the statute obliges the court to determine whether to take further testimony and evidence, and to weigh any conflicting evidence before itself determining the facts. Supervisors do not get the benefit of the “substantial evidence” standard. As a result, issues of fact in these proceedings may not be transferred to the Appellate Division pursuant to CPLR 7804 (g).
Notwithstanding the many matters referred to in the course of making his decision, Tazbir’s determination rests entirely on only two grounds. Tazbir first held that the village territorial boundaries are not defined with “common certainty” as required by Village Law § 2-202 (1) (c) (1) and § 2-206 (1) (g). Tazbir’s second basis for invalidating the petition is his conclusion that “[a] margin of error of over 12% exists in the complete list of regular inhabitants when the evidence of persons erroneously included is coupled with the evidence of persons erroneously excluded” (Village Law § 2-202 [1] [c] [2]; § 2-206 [1] [g]).
Tazbir’s arguments that the court must address “substantial evidence” and defer to his administrative discretion reveal more than just his fundamental misunderstanding of what the Village *416 Law required of him and the nature of judicial review of his ministerial decision making. Like Tazbir’s prior efforts to take advantage of having improperly instructed the North Green-bush Town Clerk not to deliver the petition for incorporation to him and to hold onto the petition rather than return it to petitioners, these latest arguments reflect Tazbir’s continuing practice of moving the target around so as to maximize the delay, accommodate himself and his supporters, and disfavor his opponents.
Tazbir’s rejection of the territorial description submitted by the petitioners is another elaborate exercise in target moving. The very first statutorily approved type of description is a “metes and bounds description” (Village Law § 2-202 [1] [c] [1] [a]). Petitioners appear to have hit the target when they presented a “metes and bounds description” accompanied by two small maps to assist in visualizing the territory. Instead of addressing the relevant issue of whether the “metes and bounds description” met the “common certainty” standard required by Village Law § 2-202 (1) (c) (1), Tazbir avoided the issue and attacked the adequacy of the petitioners’ visual aid. Tazbir ultimately refused to consider the description’s adequacy by improperly adopting the objection that the description did not refer to any filed maps or other established documents. In point of fact, the statute says that a “metes and bounds description” alone is satisfactory and Tazbir’s adopting the objection was improper.
Tazbir then proceeded to invent the requirement that the description be prepared by a person who is presently licensed as a surveyor. Village Law § 2-202 (1) (c) (1) does not require that proposed boundary descriptions be stamped by a licensed surveyor or that the person preparing a description even be identified, much less that he or she be professionally licensed. Tazbir’s attempts to graft requirements from the Education Law into the Village Law are completely baseless. The court notes that Tazbir’s invented requirements would serve no necessary purpose because the petitioners’ description is not the official description. An official map and metes and bounds description need not be prepared until after a successful election and that map and description will not be prepared by the petitioners, but by the clerk who, after the election, shall furnish or cause it to be prepared “at the original expense of the towns in which such territory is located.” (Village Law § 2-232 [c].)
Looking at the record upon which Tazbir made his determination, the court finds that the objectors failed to meet their *417 burden (Village Law § 2-206 [3]) of proving that the territorial description does not comply with the Village Law § 2-202 (1) (c) (1) requirements. Thus, Tazbir improperly shifted the burden of proof to petitioners when he adopted the objectors’ arguments and improperly failed to address the relevant question of whether the description met the statutory requirement as set forth in Village Law § 2-202 (1) (c) (1). On considering all of the evidence and objections, the court finds that there is no need to take further evidence or testimony and that the metes and bounds description attached to the petition for incorporation meets the “common certainty” standard and is in one of the forms required by the statute. The court, therefore, reverses Tazbir’s rejection of the territorial description.
Tazbir’s other basis for rejecting the petition for incorporation was his conclusion that “[a] margin of error of over 12% exists in the complete list of regular inhabitants when the evidence of persons erroneously included is coupled with the evidence of persons erroneously excluded” (Village Law § 2-202 [1] [c] [2]; § 2-206 [1] [g]). Once again, Tazbir has moved the target by contriving a new standard and new factors that are not included within the statute or the case law he cites. Notwithstanding Tazbir’s asserting that the Village Law requires invalidation of a petition even where the “list of regular inhabitants was no more than 2% inaccurate,” neither the Village Law nor the cases he cites refer to a “2%” standard, “accuracy” or “margin of error.”
The cases that Tazbir cites, Matter of Incorporation of Vil. of Viola Hills (Lempert — Conklin) (129 AD2d 579 [1987]) and Matter of Elevitch v Colello (168 AD2d 681 [1990]), only insert the adjective “complete” into the statutory language. “Completeness” would not support Tazbir’s rejecting the list based on its overinclusiveness. Thus, Tazbir changed the target from “completeness” to “accuracy” and “margin of error” in order to allow him to conclude that inclusion of the names of 103 individuals who had allegedly died, registered to vote outside of North Greenbush, or who no longer lived within the designated area was “significant enough to render the petition legally insufficient.” The 103 names are irrelevant to the question of the “completeness” of the list. The court finds that Tazbir had no legal basis upon which to judge the list of regular inhabitants based on its “accuracy” and “margin of error” and the “2%” that he refers to is not contained in any of the cases he allegedly relied on. Tazbir made no finding that would have made *418 the alleged overinclusion relevant, such as a finding that the extra names were used to pad the list of regular inhabitants so as to raise it above the minimum 500 inhabitants required by Village Law § 2-202 (1) (b) (3). Accordingly, the court determines that Tazbir’s reliance on the presence of the 103 names as a basis for invalidating the petition was erroneous as a matter of law and could not serve as a basis for invalidating the petition for incorporation.
Tazbir also points to a second category of objections, 240 persons who were allegedly improperly “excluded” from the regular list of inhabitants. The omission of any individuals who should have been on the list would of course be relevant to the question of the list’s “completeness.” Before proceeding to Tazbir’s factual finding however, the court must first explore the legal underpinnings of using the list’s “completeness” as a basis for evaluating petitions.
In assessing whether “completeness” is actually required and, if it is, attempting to ascertain just what “completeness” would mean, the court first notes that the Village Law lacks any reference to the list being “complete.” That adjective was inserted by the courts in the decisions cited by Tazbir. When the courts in those cases grafted the adjective “complete” into the statutory language, they failed even to acknowledge that they were doing so, much less to explain why they were doing so. The decisions are also of no practical value in the present case because none of those decisions even hints at what way the lists in question were not “complete.” As noted previously, Tazbir is incorrect when he asserts that those cases either recognized or set a “2%” standard. Those decisions leave open the question of just what standard of “completeness” was used or should be used by supervisors and other courts when determining whether a list of regular inhabitants is “complete.” Those decisions are essentially meaningless and of no utility in assessing whether the list of regular inhabitants attached to the petition that was circulated in this case meets the statutory requirement.
The court next turns to Tazbir’s analysis of the objections to the list based on the alleged “exclusion” of persons who should have been counted as regular inhabitants. Tazbir once again moves the target by inventing a requirement with his finding that “the petition itself is internally inconsistent in that it includes at least 23 signatories who are not set forth in the list of regular inhabitants.” The Village Law neither sets such internal consistency as a requirement nor lists it as a legitimate objec *419 tion to a petition. Inasmuch as the Village Law does not prohibit people from moving into the area during the petitioning process and makes no provision for amending the list after the petition is circulated for signatures, petitioners correctly concluded, and may not be faulted for recognizing that it would be improper to add the names of those inhabitants they became aware of during the course of obtaining signatures. Accordingly, the court finds that Tazbir erred as a matter of law when he concluded that such internal inconsistency was relevant to the question of the petition’s legal sufficiency.
The next question is whether the objectors met their burden of proof when objecting that the roughly 240 names presented by United North Greenbush, Inc. (UNG) should have been included in the list that accompanied the petition. UNG’s conclusory assertion of fact was not enough for the objectors to meet their Village Law § 2-206 (3) evidentiary burden of establishing that those 240 persons actually were “regular inhabitants” of the proposed village in 2003 prior to the petition and attachments being assembled in preparation for circulating copies for signatures.
UNG failed to present evidence demonstrating that the 240 individuals it listed were “regular inhabitants” in 2003 or any other time, past, present or future. There being no evidence submitted with their objection, the court finds that UNG failed to meet its burden of proof and Tazbir erred when he accepted their objection despite their failure to provide evidence to support their claim.
The court also finds that Tazbir erred when he allegedly consulted a June 11, 2004 list of voters registered in North Greenbush that the Galloglys submitted in support of their objections as a basis for making findings of fact regarding regular inhabitants of the area in 2003. The court finds that the 2004 registration list submitted by the Galloglys does not and could not support Tazbir’s conclusion. First, the 2004 voter list does not reveal what was available to the petitioners in voter lists from 2003, much less address the relevant issue of whether the individuals named in it were in fact “regular inhabitants” of the proposed Village of Defreestville in 2003 when the list of “regular inhabitants” was formulated. Thus, Tazbir’s conclusion would depend upon his making the baseless assumptions that no one moved into the area during the proceeding year and that every person shown as being registered to vote in 2004 would also have been a regular inhabitant in 2003.
*420 Even assuming solely for the sake of argument that the date of a voter’s registration in North Greenbush as reflected in the 2004 list can also be used as evidence the voter was also a regular resident of the proposed village on that date, the court further concludes that the list does not support Tazbir’s conclusion. Tazbir appears to have both ignored the 2004 list in part and once again moved the target without acknowledging that he was doing so. Even a cursory comparison of the first page of the UNG list and the 2004 registration list reveals that the 2004 list does not support Tazbir’s conclusion. First, many of the UNG names do not appear on the 2004 registration list and thus do not support UNG’s factual assertion and contradict Tazbir’s conclusion. For example, of the 24 names on the first page of the UNG list, four of the individuals were not registered to vote in 2004. As they do not appear on the 2004 list and there is no other evidence supporting a finding that they were regular inhabitants, Tazbir had no grounds for counting them or the unregistered individuals who would appear on later pages toward the 240 figure he adopted.
The court further finds that the 2004 registration list reflects that many of the persons that UNG claims were regular inhabitants did not in fact register to vote anywhere in North Green-bush until 2003 and 2004. If Tazbir consulted the 2004 registration list, he would have noticed that UNG was listing many individuals who would not have been on the voting rolls until after the petitioners had prepared their list of regular inhabitants. Instead of recognizing that they did not belong on the list, Tazbir once again moved the target, this time by demanding that the list of regular inhabitants created prior to the canvassing process include the names of persons of whom there was no record until after the list of regular inhabitants was created. Again using the first page alone of UNG’s list to illustrate, the court finds that 4 of the remaining 20 people did not register to vote in North Greenbush until 2004. Thus, there being no evidence that those individuals had been living in the proposed area of Defreestville for an extended period of time before deciding to register, there was no basis for Tazbir’s counting those individuals as “regular inhabitants” in 2003. Similarly, 5 of the remaining 16 names did not register to vote until 2003 and were likely not included in the 2003 list of registered voters. As regard the remaining 11 names, the fact remains that the 2004 voter registration list does not purport to set forth when they first came to reside within the area of the proposed village and therefore cannot serve as evidence to support UNG’s objection.
*421 On considering all of the evidence and objections, there is no need to take further evidence or testimony. The court finds that there was no evidence supporting UNO’s claim that 240 names were improperly excluded from the list of regular inhabitants. Tazbir’s conclusion that 240 names were omitted from the list is rejected as unfounded by either the evidence presented by UNO or the evidence Tazbir referred to in his decision. Accordingly, Tazbir had no basis for concluding that the list was not “complete” and the court reverses Tazbir’s conclusion that the petition was legally insufficient.
Tazbir also requests that if his decision of July 24, 2004 is overturned by the court, then the matter should be remanded to him for consideration of other objections that he failed to make findings on or that have come up since he rendered his decision. As with the other inventive objections, requirements and obstacles that Tazbir has previously used to impede the petitioners, there is no statutory basis for Tazbir’s request or for the court’s granting the request. As was pointed out earlier, the supervisor’s evaluation of the petition’s sufficiency is merely a ministerial matter. Were there need for further evidence, it is the court, not the supervisor, that is authorized to take farther evidence or testimony and make determinations of fact and law.
The Galloglys have raised eight counterclaims. After considering the Galloglys’ arguments, the court rejects their notion that Tazbir proceeded illegally when he conducted the hearing prior to completion of a State Environmental Quality Review Act review or annexation of property within the proposed village. The court finds that the Galloglys have failed to meet their burden of demonstrating that the proposed village is gerrymandered or the petition is otherwise improper and therefore rejects their counterclaims.
The court also rejects the respondents’ requests for the court to step in and make factual findings based on new information and changed circumstances upon which they assert the petition should be rejected or the holding of an election should be further delayed. Those matters are not properly before the court on this application.
The court has also considered respondents’ objections that necessary parties were not initially served or named and finds that those deficiencies have been cured by the petitioners. The Galloglys’ objection that they were not properly served is rejected. The Galloglys, having made their objections via counsel, were served by delivery of the papers to their counsel. *422 As for the remaining objections, affirmative defenses and counterclaims raised by the respondents, the court has considered them and finds them to be unsupported.
The court finds that Tazbir’s decision determining that the petition for incorporation of the Village of Defreestville as a village in the Town of North Greenbush did not comply with the requirements of Village Law article 2 was based upon insufficient evidence, was contrary to the weight of the evidence submitted at the hearing and was therefore not in compliance with the statutory provisions. Accordingly, Tazbir’s decision is hereby reversed, and it is further ordered, adjudged and decreed that it is hereby determined that the aforesaid petition for incorporation complies with the requirements of Village Law article 2.